UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

James Edward Rose, Jr.

   v.                                                      Civil No. 19-cv-311-LM

Governor, State of New Hampshire, et al.[1]

## REPORT AND RECOMMENDATION

Plaintiff James Edward Rose, Jr.'s complaint (Doc. No. 1) is before the court for preliminary review, pursuant to 28 U.S.C. § 1915(e)(2) and LR 4.3(d)(2). Also before the court are nine motions containing factual allegations explaining matters in the complaint, which this court considers in its preliminary review. See Doc. Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11.

## Background

Rose alleges that in June 1973, his then wife Donna gave birth to Rose's son Jamey. Rose asserts he did not know about Jamey's birth, as he and Donna were separated at the time, and Rose was incarcerated in California for some of that period. He alleges that Donna had told him at some time during the course

---

[1]Plaintiff names as defendants: New Hampshire Governor Chris Sununu; Hillsborough County; Hillsborough County Board of Commissioners Chair Toni Pappas; City of Manchester Mayor Joyce Craig; Beverly Kidder; two deceased defendants, Donna Ruth Jackson and Alan Kidder; and a list of unnamed City and County health care providers.

of their divorce in 1980 that she had "miscarried," that the son had been stillborn, or that she had "lost" the child.

Rose asserts that Donna abandoned Jamey when he was an infant, and that Jamey lived in foster homes until he was three, when Alan and Beverly Kidder adopted him. Rose, who asserts he was not aware of Jamey's existence, was not aware of Jamey's placements in foster homes or of his adoption by the Kidders.

Attached to the complaint is a March 28, 1974 Order of a state court in New Hampshire, finding that Jamey had been neglected and granting the Hillsborough County Department of Public Welfare temporary custody. See Doc. No. 1-4, at 5. That Order lists Jamey's "mother" and "father" among the parties present before the court but does not identify those individuals by name. See Doc. No. 1-4, at 5. Rose believes an imposter claiming to be Rose appeared in court as Jamey's father when Rose's parental rights were terminated. Rose asserts that he received records of the adoption for the first time in February 2019, from an anonymous source.

Rose claims that the adoption was "void ab initio" because Rose received no notice of the hearing at which his parental rights were terminated, and he did not consent to the adoption. Rose asserts that State of New Hampshire, Hillsborough County, and City of Manchester agents named as defendants, the Kidders, and Donna conspired together to violate his federal rights with

2

regard to the termination of Rose's parental rights.  Rose, who is African American, asserts that racist attitudes affected Jamey's situation, and resulted in the lack of notice provided to Rose regarding the state court proceedings.  Rose seeks damages.

## Preliminary Review Standard

This court conducts a preliminary review of complaints filed in forma pauperis before defendants are served with process.  See 28 U.S.C. § 1915(e)(2); LR 4.3(d)(2).  Claims may be dismissed sua sponte if, among other things, the complaint fails to state a claim upon which relief may be granted, the court lacks jurisdiction, or a defendant is immune from the relief sought.  See 28 U.S.C. § 1915(e)(2).  To determine whether to dismiss claims for failure to state a claim, the court takes as true the factual content in the complaint and inferences reasonably drawn from those facts, strips away the legal conclusions, and considers whether plaintiff has stated a claim that is plausible on its face.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In determining whether a pro se complaint states a claim, the court must construe the complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  Dismissing an action based on an

3

affirmative defense upon preliminary review is permissible if the facts alleged in the complaint, or matters susceptible of judicial notice, conclusively establish the elements of the affirmative defense.  See Gray v. Evercore Restructuring LLC, 544 F.3d 320, 324 (1st Cir. 2008).

## Claims

Construed liberally, the complaint asserts the following claims:

    1.   State actors acting in concert with private parties terminated Rose's parental rights without providing plaintiff with prior notice and an opportunity to be heard, in violation of his Fourteenth Amendment due process rights.

    2.   Defendants violated plaintiff's rights under the First, Fourth, Fifth, Sixth, and Eighth Amendments.

    3.   Defendants engaged in criminal conduct in connection with Jamey's foster care placements, adoption, and the termination of plaintiff's parental rights.

## Discussion

I.   Motion Withdrawing Claims on Jamey's Behalf (Doc. No. 7)

Rose's initial filings assert claims on his own behalf and on behalf of Jamey, an adult who did not sign the complaint.  In Document No. 7, Rose withdraws all claims asserted on Jamey's behalf.  The district judge should grant the relief requested in Document No. 7, to the extent it should find that all claims asserted on behalf of Jamey are withdrawn.

II. Rooker Feldman

Rose's claims for damages are premised on this court finding that in 1974, or at the time of Jamey's adoption on or about that date, Rose received no notice before his parental rights were terminated by a state court judgment, and that therefore those adoptions proceedings are void.

> The [Rooker-Feldman] doctrine divests "lower federal courts of jurisdiction to hear certain cases brought by parties who have lost in state court." . . . [T]he Rooker-Feldman doctrine applies "where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'"

Sinapi v. R.I. Bd. of Bar Exam'rs, 910 F.3d 544, 549 (1st Cir. 2018). The cases upon which the Rooker-Feldman doctrine is based, Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923), and D.C. Ct. App. v. Feldman, 460 U.S. 462 (1983), stand for the proposition that, among federal courts, "only the Supreme Court has the power to reverse or modify final state court judgments." Sinapi, 910 F.3d at 549.

Rose asserts he lost rights through state court proceedings terminating his parental rights, when an imposter stood in his place, and allowing the Kidders to adopt Jamey. Rose seeks review and rejection of those state court judgments, which he asserts deprived him of rights or protected interests without due process, and otherwise injured him. The Rooker-Feldman

5

doctrine divests this court of jurisdiction over Rose's federal claims. Accordingly, Rose's complaint should be dismissed for lack of jurisdiction.

III. Statute of Limitations (Claim 1)

An independent basis for dismissing Rose's claims is the statute of limitations. Rose's federal claims arise under 42 U.S.C. § 1983. Section 1983 cases borrow the relevant limitations period applied in personal injury cases in the state where the claim arose. See Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010). In New Hampshire, that period is three years. See id.; N.H. Rev. Stat. Ann. § 508:4.

In two filings entitled "Motion Addressing Statute of Limitations Pursuant to Federal Law" (Doc. No. 4) and "Motion to Toll Statute of Limitations in the Case at Bar Pursuant to Federal and State Law" (Doc. No. 5), Rose argues that the fact that the records concerning Jamey's adoption have been, and remain, sealed provides a basis for tolling the statute of limitations. In that regard, Rose asserts as follows:

> Plaintiff contacted the Prothonotary's Office seeking information about his Son's adoption some 15 years ago by telephone, and the Plaintiff was told that the adoption records of Jamey Kidder were sealed and that not even a Court Order could open those records. It was at this time the Plaintiff was made to feel helpless until February 11, 2019 when he discovered Court papers in his Mailbox left there by some unknown person. . . .

6

Doc. No. 4, at 2.

Rose attempts to invoke the "discovery rule" to render his claims timely. The discovery rule, "a doctrine that delays accrual of a cause of action until the plaintiff has 'discovered' it," Merck & Co. v. Reynolds, 559 U.S. 633, 644 (2010), is a matter of federal law in cases arising under section 1983. See Gregg v. Dep't of Pub. Safety, 870 F.3d 883, 887 (9th Cir. 2017); see also Wallace v. Kato, 549 U.S. 384, 388 (2007) ("the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law").

> A section 1983 claim normally accrues at the time of the injury, when the putative "plaintiff has a complete and present cause of action" and can sue. But to the extent that the facts necessary to bring a claim are unknown, the discovery rule may delay accrual until such facts "are or should be apparent to a reasonably prudent person similarly situated." Typically, the discovery rule comes into play either when the injury has lain dormant without manifestation or when "the facts about causation [are] in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain."

Jardín De Las Catalinas Ltd. P'ship v. Joyner, 766 F.3d 127, 133 (1st Cir. 2014) (citations omitted). "Under the federal 'discovery rule,' an action accrues when a plaintiff knows both the existence of an injury and the cause of the injury." Kingham v. Pham, 753 F. App'x 336, 337 (5th Cir. 2019) (citations omitted).

But "a plaintiff need not have conclusive evidence of the

7

> cause of an injury in order to trigger the statute of limitations." [Courts] instead "focus on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm."

Jenkins v. Chance, 762 F. App'x 450, 455 (10th Cir. 2019) (citations omitted).

The facts alleged in the complaint and asserted in Document Nos. 4 and 5 demonstrate that the sealing of the records at issue has not concealed the essential facts of Rose's due process claim in a manner that would not have put a reasonable person on notice that wrongful conduct caused the harm, until a date less than three years before Rose filed this case. Rose, who alleges he did not receive any prior notice or opportunity to participate in the state proceedings that resulted in the adoption and termination of his parental rights, has pleaded facts indicating that he has known for at least fifteen years that there were adoption proceedings involving Jamey Kidder which occurred sometime prior to the date of his call to the state court clerk's office. At the time Rose attempted to obtain access to Jamey's adoption records, approximately fifteen years ago, Rose knew or should have known the facts he pleads here, that he had not received any prior notice or an opportunity to participate in the proceedings that resulted in the termination of his parental rights. Under such circumstances, Rose's federal claim asserting that state actors

8

deprived him of his rights without due process is time-barred. The district judge should dismiss Claim 1 and deny Rose's motions (Doc. Nos. 4, 5) seeking to avoid the impact of the statute of limitations on his claims.

IV.   Criminal Conduct (Claim 3)

Plaintiff alleges that defendants effectively kidnapped Jamey and otherwise engaged in criminal conduct affecting Rose's rights.  There is no federal constitutional right to have criminal wrongdoers brought to justice.  See Leeke v. Timmerman, 454 U.S. 83, 87 (1981); Nieves-Ramos v. Gonzalez-de-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990).  A private party has no standing to seek relief in a civil action for allegedly criminal conduct.  See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) (individual has no "judicially cognizable interest in the prosecution or nonprosecution of another").  Rose's claims (Claim 3) based on allegations of criminal misconduct are properly dismissed on that basis.

V.   Remaining Federal Claims (Claim 2)

Rose has not alleged facts regarding the nature of his First, Fourth, Fifth, Sixth, and Eighth Amendment claims and has thus failed to state any claim upon which relief can be granted based on alleged violations of those constitutional rights.

9

Accordingly, Claim 2 is properly dismissed on that basis.

## VI.  Remaining Motions (Doc. Nos. 3, 6, 8, 9, 10, 11)

As all of the claims in this action should be dismissed, the pending motions seeking to unseal state court adoption records (Doc. No. 3), and to expeditiously and fairly rule on plaintiff's claims (Doc. Nos. 6, 8, 9, 10, 11), should be denied as moot.

## Conclusion

For the foregoing reasons, the district judge should grant the motion to withdraw claims asserted on behalf of Jamey Kidder (Doc. No. 7), dismiss the complaint (Doc. No. 1), and deny the remaining motions (Doc. Nos. 3, 4, 5, 6, 8, 9, 10, 11).  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2); LR 7.2(d).  The fourteen-day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

10

July 12, 2019

cc:  James Edward Rose, Jr., pro se